# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ERICA A. VASQUEZ, Individually, and
as Natural Mother of KAITLYN ROSE
CHAVEZ; STEVEN W. CHAVEZ, Individually,
and as Natural Father of KAITLYN ROSE
CHAVEZ; ERICA A. VASQUEZ, in her
Capacity as the Natural Mother and
Next Friend of Dylan B. Vasquez and
Amanda Vasquez, Minors; and
BEATRIZ RIVERA, Personal
Representative of the ESTATE OF KAITLYN
ROSE CHAVEZ, Deceased,

       Plaintiffs,

v.                                                              Case No.  1:17-CV-00272

UNITED STATES OF AMERICA,

       Defendant.

## COMPLAINT FOR WRONGFUL DEATH; MEDICAL MALPRACTICE; NEGLIGENCE; NEGLIGENCE *PER SE*; NEGLIGENT HIRING, CREDENTIALING, TRAINING, AND SUPERVISION; RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AND LOSS OF CONSORTIUM

      COME NOW the Plaintiffs, **ERICA A. VASQUEZ**, Individually, and as Natural

Mother of **KAITLYN ROSE CHAVEZ**; **STEVEN W. CHAVEZ**, Individually, and as

Natural Father of **KAITLYN ROSE CHAVEZ**; **ERICA A. VASQUEZ**, in her Capacity as

the Natural Mother and Next Friend of Dylan B. Vasquez and Amanda Vasquez, Minors;

and **BEATRIZ RIVERA**, as Personal Representative of the **ESTATE OF KAITLYN ROSE**

**CHAVEZ**, Deceased, by and through their attorneys of record, the **BRANCH LAW FIRM**

1

(**Margaret M. Branch, Esq. and Trevor S. M. Stevens, Esq.**), and for their causes of action against the Defendant, state as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA").  This Federal District Court is vested with exclusive subject matter jurisdiction over this action.

2.      Plaintiffs have exhausted the administrative requirements set forth in 28 U.S.C. § 2675(a), by submitting Standard Form 95, Claim for Damages, Injury, or Death to the United States Department of Health and Human Services ("USHHS"), 330 C Street, SW, Switzer Building, Suite 2600, Washington, D.C., 20201, on or about January 28, 2016.

3.      Plaintiffs filed an Addendum to their administrative claim under the Federal Tort Claims Act on or about March 2, 2016.

4.      More than six months have lapsed since Plaintiffs filed the above-mentioned Addendum.  Settlement talks with USHHS were not able to resolve this matter at the claims stage.  No denial letter has been received by Plaintiffs, so the claim has been deemed denied, as set forth in 28 U.S.C. § 2675(a).

5.      This Court has jurisdiction over the asserted claims because none of the negligent acts or omissions alleged herein are the types of discretionary functions excluded from the FTCA under 28 U.S.C. § 2680(a).

6.      All acts or omissions complained of herein occurred in the City of Espanola, County of Rio Arriba, State of New Mexico.

7.     Venue is properly in this District pursuant to 28 U.S.C. § 1402(b) because Plaintiffs reside in the State of New Mexico, and the acts or omissions complained of occurred in the State of New Mexico.

## PARTIES

8.     This action is for Wrongful Death; Medical Malpractice; Negligence; Negligence *Per Se*; Negligent Hiring, Credentialing, Training, and Supervision; Respondeat Superior and Vicarious Liability; Negligent Infliction of Emotional Distress; and Loss of Consortium.

9.     Beatriz Rivera, is a business woman as well as a law school graduate and former attorney, doing business in Santa Fe, New Mexico, with her principal place of business located at 604 D Griffin Street, Santa Fe, New Mexico 87501.  Ms. Rivera is the duly appointed Personal Representative of the Estate of Kaitlyn Rose Chavez.

10.     Plaintiffs state that Kaitlyn Rose Chavez (hereinafter referred to as "Kaitlyn Rose Chavez" or "Baby Kaitlyn"), was born at Presbyterian Espanola Hospital (hereinafter "Espanola Hospital"), located at 1010 Spruce Street, Espanola, New Mexico 87532, on July 15, 2015, and at all times material hereto was a resident of the City of Hernandez, County of Rio Arriba, State of New Mexico.

11.     Kaitlyn Rose Chavez died on August 6, 2015, at twenty-two (22) days of age, at home, and was pronounced dead at Espanola Hospital, as a direct and proximate result of the negligent acts, omissions, and breaches of duties by employees of the federal government while acting within the scope of their employment at El Centro Family Health, due to the medical care and treatment provided to Baby Kaitlyn, which is stated with particularity hereinafter.

3

Defendant United States of America, if a private person, would be liable to the claimants in accordance with the law of the place where the acts or omissions occurred.

12.     Plaintiff Erica A. Vasquez (hereinafter referred to as "Erica Vasquez" or "Ms. Vasquez"), is the biological mother of Kaitlyn Rose Chavez, and at all times material hereto was a resident of the City of Hernandez, County of Rio Arriba, State of New Mexico.

13.     Plaintiffs Dylan B. Vasquez and Amanda Vasquez were the biological siblings of Kaitlyn Rose Chavez, and at all times material hereto were residents of the City of Hernandez, County of Rio Arriba, State of New Mexico.

14.     Plaintiff Steven W. Chavez (hereinafter referred to as "Steven Chavez" or "Mr. Chavez"), is the biological father of Kaitlyn Rose Chavez, and at all times material hereto was a resident of the City of Hernandez, County of Rio Arriba, State of New Mexico.

15.     Based upon information and belief, El Centro Family Health is a Domestic Nonprofit Corporation, which maintains various healthcare facilities throughout northern New Mexico, and its principal place of business in New Mexico is at 538 N Paseo de Onate, Espanola, New Mexico, 87532.  El Centro Family Health is a medical facility governed by the federal government, and therefore, the United States of America is an appropriate Defendant under the Federal Tort Claims Act.

16.     Based upon information and belief, Cynthia Comly-Van Andel, M.D. (hereinafter "Dr. Comly"), is a licensed physician, employed and practicing at El Centro Family Health, located at 2010 Industrial Park Road, Espanola, New Mexico, 87532.  Plaintiffs further state and allege that Cynthia Comly-Van Andel, M.D. is covered under the Federal Tort Claims Act.

4

17.     Based upon information and belief, Amanda Jean Goertz, M.D. (hereinafter "Dr. Goertz"), is a licensed physician, employed and practicing at El Centro Family Health, located at 2010 Industrial Park Road, Espanola, New Mexico, 87532.  Plaintiffs further state and allege that Amanda Jean Goertz, M.D. is covered under the Federal Tort Claims Act.

18.     Based upon information and belief, the United States of America is an appropriate Defendant under the Federal Tort Claims Act.

## STATEMENT OF FACTS

19.     During the time period from approximately, December 9, 2014, through July 30, 2015, Erica Vasquez was being seen by Dr. Comly at El Centro Family Health, for her prenatal and post-partum care.

20.     On or about March 13, 2015, Erica Vasquez was seen by Dr. Comly, at El Centro Family Health, who ordered an ultrasound because of the low growth of Baby Kaitlyn *in utero*.

21.     An advanced ultrasound (Color Spectra Doppler) was performed at Santa Fe Imaging on April 3, 2015, at the request of Dr. Comly.  The radiologist that interpreted the ultrasound indicated that the ventricular outflow tracts "were not well characterized and should be followed up."

22.     On or about May 22, 2015, Dr. Comly ordered a second advanced ultrasound because of the low growth of Kaitlyn and to view the anatomy of Baby Kaitlyn *in utero*.

23.     An advanced ultrasound (Color Spectra Doppler) was performed at Santa Fe Imaging on June 5, 2015, at the request of Dr. Comly.  The radiologist that interpreted the ultrasound again indicated that, "[a]s previously, the ventricular outflow tracts are not well seen and *require* follow up." (emphasis added).

5

24.     Dr. Comly sent Ms. Vasquez to Espanola Hospital on July 14, 2015, to induce pregnancy due to preeclampsia.  Ms. Vasquez was admitted to Espanola Hospital under the care of Dr. Goertz.

25.     Ms. Vasquez' prenatal records were available to all care providers prior to admission and up to discharge. Upon information and belief, while having access to all Erica Vasquez' prenatal records, including the two ultrasounds indicating the radiologist's concerns, Dr. Comly and Dr. Goertz never communicated to providers at Espanola Hospital the results and/or recommendations for follow-up or even mentioned the ventricular outflow tract issue as shown in the ultrasounds performed at Santa Fe Imaging.

26.     On July 14, 2015, at approximately 1:26 p.m., Dr. Comly documented in the Espanola Hospital charting system that, "perinates rec low threshold for fetal echo for any murmur."  However, Dr. Comly failed to order an echocardiogram for Baby Kaitlyn after her birth.  Dr. Goertz, the treating physician at Espanola Hospital, did not acknowledge an echocardiogram was needed for Baby Kaitlyn after her birth, nor did she arrange for Baby Kaitlyn to have one.

27.     Baby Kaitlyn was born on July 15, 2015, at 8:28 a.m. under the care of Dr. Goertz.

28.     On July 17, 2015, Dr. Goertz notes that Baby Kaitlyn has "excessive weight loss" at almost 10% since birth.  Dr. Goertz expressed no concern for the weight loss or for Baby Kaitlyn presenting with failure to thrive.  Dr. Goertz did not order testing or follow-up to determine the cause of the weight loss.  Instead, Baby Kaitlyn was discharged home with her parents the same day the weight loss was noted.

6

29.     Baby Kaitlyn was seen by Dr. Comly on July 21, 2015; July 27, 2015; and July 30, 2015.  At all three visits, Baby Kaitlyn was hypoxic with Oxygen saturations between 90-91%.  Dr. Comly did not refer Baby Kaitlyn to a specialist or order any testing.

30.     Baby Kaitlyn died due to an undiagnosed coarctation of the aorta on August 6, 2015, at the age of 22 days old.

31.     The Plaintiffs Erica A. Vasquez and Steven W. Chavez have suffered loss of consortium due to the loss of their daughter. The Plaintiffs Dylan B. Vasquez and Amanda Vasquez have suffered loss of consortium due to the loss of their sister.

32.     The loss of consortium to all Plaintiffs includes, but is not limited to, loss of companionship, impairment of the family relationship, loss of family stability, mental and emotional anguish, and other associated traumas related to the harms experienced by the Plaintiffs.

33.     The Plaintiffs Erica A. Vasquez and Steven W. Chavez have suffered severe emotional distress caused by the contemporaneous sensory perception of the death of their daughter.

## COUNT I.

### MEDICAL MALPRACTICE AND NEGLIGENCE
#### (Cynthia Comly-Van Andel, M.D.)

34.     Plaintiff incorporates by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

7

35.     Dr. Comly was the primary doctor that managed the care and treatment of Ms. Vasquez and Baby Kaitlyn from the prenatal phases starting around December 9, 2014, through the pregnancy, postpartum, and up to Baby Kaitlyn's death on August 6, 2015.

36.     Dr. Comly owed a duty to Ms. Vasquez and Baby Kaitlyn to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified doctors practicing under similar circumstances, giving due consideration to the locality involved.

37.     Dr. Comly breached her duty by:

a.  Negligently failing to follow-up on the recommendation, and then requirement, of the radiologist indicating heart problems in Baby Kaitlyn;

b.  Negligently not ordering an echocardiogram, even after noting one was needed on July 14, 2015;

c.  Negligently failing to recognize that Baby Kaitlyn presented with hypoxia on July 21, 2015; July 27, 2015; and July 30, 2015;

d.  Negligently failing to conduct a thorough physical examination on Baby Kaitlyn on July 21, 2015; July 27, 2015; and July 30, 2015;

e.  Negligently failing to recognize that Baby Kaitlyn presented with failure to thrive due to heart condition;

f.  Negligently failing to refer Baby Kaitlyn to a cardiac specialist that could handle her condition;

g.  Negligently failing to test Baby Kaitlyn for Critical Congenital Heart Defects; and

h.  By other means as learned through discovery during this litigation.

38.     The breaches of duty by Dr. Comly were malicious, willful, reckless, wanton, and/or and performed with utter disregard for the safety and welfare of Baby Kaitlyn.

39.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Comly, Baby Kaitlyn experienced pain and suffering, and died prematurely.

8

40.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Comly, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

41.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Comly, Baby Kaitlyn experienced mental anguish, numerous physical and emotional damages, as well as psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

42.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Comly, Plaintiffs Erica A. Vasquez, Steven W. Chavez, Dylan B. Vasquez, and Amanda Vasquez suffered loss of consortium.

43.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligence of Dr. Comly, without any contributing negligence on the part of Plaintiffs.

44.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligence of Dr. Comly, without any contributing negligence on the part of Plaintiffs.

## COUNT II.

### MEDICAL MALPRACTICE AND NEGLIGENCE
#### *(Amanda Jean Goertz, M.D.)*

45.     Plaintiff incorporates by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

46.     Dr. Goertz was the primary doctor that managed the care and treatment of Ms. Vasquez and Baby Kaitlyn during their stay at Espanola Hospital on July 14-17, 2015.

9

47.     Dr. Goertz owed a duty to Ms. Vasquez and Baby Kaitlyn to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified doctors practicing under similar circumstances, giving due consideration to the locality involved.

48.     Dr. Goertz breached her duty by:

a.   Negligently failing to review the prenatal records of Ms. Vasquez, which indicated that follow-up on Baby Kaitlyn was required;

b.   Negligently not ordering an echocardiogram when a note was entered on July 14, 2015, indicating that Baby Kaitlyn would need one;

c.   Negligently discharging Baby Kaitlyn after acknowledging that she had "excessive weight loss" of nearly 10%;

d.   Negligently failing to conduct further testing after Baby Kaitlyn presented with severe weight loss;

e.   Negligently failing to recognize that Baby Kaitlyn presented with failure to thrive due to her heart condition;

f.   Negligently failing to refer Baby Kaitlyn to a cardiac specialist that could handle her condition;

g.   Negligently failing to test Baby Kaitlyn for Critical Congenital Heart Defects; and

h.   By other means as learned through discovery during this litigation.

49.     The breaches of duty by Dr. Goertz were malicious, willful, reckless, wanton, and/or performed with utter disregard for the safety and welfare of Baby Kaitlyn.

50.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Goertz, Baby Kaitlyn experienced pain and suffering, and died prematurely.

51.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Goertz, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

10

52.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Goertz, Baby Kaitlyn experienced mental anguish, numerous physical and emotional damages, as well as psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

53.     As a direct and proximate result of the negligent acts and/or omissions of Dr. Goertz, Plaintiffs Erica A. Vasquez, Steven W. Chavez, Dylan B. Vasquez, and Amanda Vasquez suffered loss of consortium.

54.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligence of Dr. Goertz, without any contributing negligence on the part of Plaintiffs.

55.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligence of Dr. Goertz, without any contributing negligence on the part of Plaintiffs.

## COUNT III.

### NEGLIGENCE
*(El Centro Family Health)*

56.     Plaintiff incorporates by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

57.     El Centro Family Health, through its administration, policies, and procedures, was negligent in the care, treatment, and diagnosis or failure to diagnose Baby Kaitlyn by failing to exercise ordinary care for the safety of Baby Kaitlyn.

58.     El Centro Family Health breached its duty by:

        a.   Failing to require testing for Critical Congenital Heart Defects;

11

b.  Failing to enforce policies and procedures;

c.  Failing to ensure that neonates are placed on proper monitoring equipment;

d.  Failing to conduct proper training for medical personnel;

e.  Allowing physicians to work at El Centro Family Health providing prenatal care and postnatal care for which they are not properly trained;

f.  Allowing physicians to practice outside their area of expertise;

g.  Failing to hire or credential physicians that are qualified and adequately trained in neonatal care;

h.  Failing to ensure that medical records that require follow-up are followed up on;

i.  Failing to have a system in place to communicate critical medical information; and

j.  By other means as learned through discovery during this litigation.

59.  The treatment, care, and management of Baby Kaitlyn by physicians employed at El Centro Family Health, during the events described in this Complaint, was malicious, willful, reckless, wanton, and/or performed with utter disregard for Baby Kaitlyn's safety and welfare.

60.  As a direct and proximate result of the negligent acts and/or omissions of El Centro Family Health, Baby Kaitlyn experienced pain and suffering, and died prematurely.

61.  As a direct and proximate result of negligent acts and/or omissions of El Centro Family Health, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

62.  As a direct and proximate result of the negligent acts and/or omissions of El Centro Family Health, Baby Kaitlyn experienced mental anguish, numerous physical and

emotional damages, as well as psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

63.     As a direct and proximate result of the negligent acts and/or omissions of El Centro Family Health, Plaintiffs Erica A. Vasquez, Steven W. Chavez, Dylan B. Vasquez, and Amanda Vasquez suffered loss of consortium.

64.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligence of El Centro Family Health, without any contributing negligence on the part of Plaintiffs.

65.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligence of El Centro Family Health, without any contributing negligence on the part of Plaintiffs.

## COUNT IV.

### NEGLIGENCE *PER SE*
*(El Centro Family Health; Cynthia Comly-Van Andel, M.D.; and Amanda Jean Goertz, M.D.)*

66.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

67.     At the time of the events described herein, there were in force and effect certain New Mexico Statutes and Regulations that were violated by El Centro Family Health through its physicians, Dr. Comly and Dr. Goertz, including, but not limited to, NMSA 1978, Section 24-1-6 (Tests Required for Newborn Infants).

13

Section 24-1-6 states in relevant parts:

     **A.**     [S]creening tests for the detection of congenital diseases [] shall be given to every newborn infant. . . . The screening tests shall include at a minimum:

…

     (28) critical congenital heart disease by means of a test performed using a pulse oximeter before the newborn infant is discharged from the hospital or birthing facility where the newborn infant was born. For the purposes of this paragraph, "pulse oximeter" means a device that measures the oxygen saturation of arterial blood.

…

     **F.**     The department shall require that all hospitals or institutions having facilities for childbirth perform or have performed screening tests for congenital diseases on all newborn infants except if the parents or guardians of a child object to the tests in writing.

68.     The management or lack of management of Baby Kaitlyn, and the violation of Section 24-1-6, was malicious, willful, reckless, wanton, and/or performed with utter disregard for the safety and welfare of Baby Kaitlyn. Particularly, the most egregious violation of this statute is that El Centro Family Health, through its physicians, Dr. Comly and Dr. Goertz, failed to perform this test even after Baby Kaitlyn presented to El Centro Family Health three (3) times with severe hypoxia—July 21, 2015; July 27, 2015; and July 30, 2015.

69.     As a direct and proximate result of the negligence *per se* by El Centro Family Health through its physicians, Dr. Comly and Dr. Goertz, Baby Kaitlyn experienced pain and suffering, and died prematurely.

70.     As a direct and proximate result of the negligence *per se* by El Centro Family Health through its physicians, Dr. Comly and Dr. Goertz, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

14

71.     As a direct and proximate result of the negligence *per se* by El Centro Family Health through its physicians, Dr. Comly and Dr. Goertz, Baby Kaitlyn suffered numerous physical and emotional damages, as well psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

72.     As a direct and proximate result of the negligence *per se* by El Centro Family Health through its physicians, Dr. Comly and Dr. Goertz, Plaintiffs Erica A. Vasquez, Steve W. Chavez, Dylan Vasquez, and Amanda Vasquez suffered loss of consortium.

73.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligence *per se* of El Centro Family Health, through its physicians, Dr. Comly and Dr. Goertz, without any contributing negligence on the part of Plaintiffs.

74.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligence *per se* of El Centro Family Health, through its physicians, Dr. Comly and Dr. Goertz, without any contributing negligence on the part of Plaintiffs.

## COUNT V.

### NEGLIGENT HIRING, CREDENTIALING, TRAINING, AND SUPERVISON
### *(El Centro Family Health)*

75.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

76.     Dr. Comly was acting as an employee, agent, apparent or ostensible agent, and/or contractor over whom El Centro Family Health had sufficient control.

15

77.    Dr. Goertz was acting as an employee, agent, apparent or ostensible agent, and/or contractor over whom El Centro Family Health had sufficient control.

78.    El Centro Family Health knew or should have known that hiring and/or credentialing Dr. Comly and Dr. Goertz and allowing these medical physicians to take care of obstetrical, prenatal, perinatal, and neonatal patients would create an unreasonable risk of injury to a group or class that includes the decedent, Baby Kaitlyn.

79.    El Centro Family Health failed to use ordinary care in hiring and/or credentialing Dr. Comly and Dr. Goertz by allowing them to take care of obstetrical, prenatal, perinatal, and neonatal patients.

80.    El Centro Family Health's negligence in hiring and/or credentialing Dr. Comly and Dr. Goertz and allowing them to take care of obstetrical, prenatal, perinatal, and neonatal patients was a direct and proximate cause of Baby Kaitlyn's injury and ultimate death.

81.    El Centro Family Health knew or should have known that Dr. Comly and Dr. Goertz were not adequately trained and/or supervised to take care of obstetrical, prenatal, perinatal, and neonatal patients, which created an unreasonable risk of injury to a group or class that includes the decedent, Baby Kaitlyn.

82.    El Centro Family Health failed to use ordinary care in not adequately training and/or supervising Dr. Comly and Dr. Goertz, and allowing them to take care of obstetrical, prenatal, perinatal, and neonatal patients.

83.    El Centro Family Health's negligence in not adequately training and/or supervising Dr. Comly and Dr. Goertz, and allowing them to take care of obstetrical, prenatal,

perinatal, and neonatal patients was a direct and proximate cause of Baby Kaitlyn's injury and ultimate death.

84.     As a direct and proximate result of the negligent hiring, credentialing, training, and supervision by El Centro Family Health, Baby Kaitlyn experienced pain and suffering, and died prematurely.

85.     As a direct and proximate result of the negligent hiring, credentialing, training, and supervision by El Centro Family Health, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

86.     As a direct and proximate result of the negligent hiring, credentialing, training, and supervision by El Centro Family Health, Baby Kaitlyn experienced mental anguish, numerous physical and emotional damages, as well as psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

87.     As a direct and proximate result of the negligent hiring, credentialing, training, and supervision by El Centro Family Health, Plaintiffs Erica A. Vasquez, Steven W. Chavez, Dylan B. Vasquez, and Amanda Vasquez suffered loss of consortium.

88.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligent hiring, credentialing, training, and supervision by El Centro Family Health, without any contributing negligence on the part of Plaintiffs.

89.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligent hiring, credentialing, training, and supervision by El Centro Family Health, without any contributing negligence on the part of Plaintiffs.

17

## COUNT VI.

### RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY
*(United States of America)*

90.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

91.     At all times material hereto, acting within the course and scope of their employment, agency relationship, or contract, Dr. Comly and Dr. Goetz failed to use ordinary care in providing treatment that a reasonable and prudent health care provider would have provided under the same or similar circumstances.   El Centro Family Health is a facility governed and managed by the federal government while acting within the scope of its employment under circumstances where the United States, if a private person, would be liable to the Plaintiffs in accordance with the law of the place where the acts or omissions occurred.  The following acts and/or omissions, include, but are not limited to:

     a.   Failing to recognize that Baby Kaitlyn had a serious and fatal condition if left untreated;

     b.   Failing to recognize that Baby Kaitlyn presented with failure to thrive due to her heart condition;

     c.   Failing to test Baby Kaitlyn for serious Critical Congenital Heart Defects;

     d.   Failing to refer Baby Kaitlyn to a specialist or another hospital that would be able to diagnose and treat her condition;

     e.   Failing to use proper diagnostic equipment in caring for Baby Kaitlyn;

     f.   Failing to ensure that medical records that require follow-up are followed up on;

     g.  Failing to act as reasonable and prudent health care providers under similar circumstances; and

     h.  By other means as learned through discovery during this litigation.

92.   At all times material hereto, the aforementioned acts and/or omissions were committed by individuals employed by, agents, representatives, apparent or ostensible agents, and/or under the control of Defendant United States of America, thereby making the United States of America liable pursuant to respondeat superior.

93.   The management or lack of management of Baby Kaitlyn's medical condition was reckless, wanton, and performed with utter disregard for her safety and welfare.

94.   As a direct and proximate result of the negligent acts and/or omissions of Defendant United States of America, through its employees, agents, apparent or ostensible agents, and/or contractors over whom the United States of America had sufficient control, Baby Kaitlyn experienced pain and suffering, and died prematurely.

95.   As a direct and proximate result of the negligent acts and/or omissions of Defendant United States of America, through its employees, agents, apparent or ostensible agents, and/or contractors over whom the United States of America had sufficient control, Plaintiffs experienced and will experience mental anguish, emotional distress, and other associated pains.

96.   As a direct and proximate result of the negligent acts and/or omissions of Defendant United States of America, through their employees, agents, apparent or ostensible agents, and/or contractors over whom the United States of America had sufficient control, Baby

Kaitlyn experienced mental anguish, numerous physical and emotional damages, as well as psychological pain, severe physical pain and suffering, and loss of enjoyment of life.

97.     As a direct and proximate result of the negligent acts and/or omissions of Defendant United States of America, through their employees, agents, apparent or ostensible agents, and/or contractors over whom the United States of America had sufficient control, Plaintiffs Erica A. Vasquez, Steven W. Chavez, Dylan Vasquez, and Amanda Vasquez suffered loss of consortium.

98.     All injuries suffered by Baby Kaitlyn relating to this incident were due to the negligence of Defendant United States of America, without any contributing negligence on the part of Plaintiffs.

99.     All injuries suffered by Plaintiffs relating to this incident, including all past, present, and future injuries, were due to the negligence of Defendant United States of America, without any contributing negligence on the part of Plaintiffs.

## COUNT VII.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*(As to Erica A. Vasquez and Steven W. Chavez against Defendant)*

100.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

101.    Erica Vasquez and Steven Chavez are the natural parents of Kaitlyn Rose Chavez, to whom they had a close familial relationship.

20

102.   Erica Vasquez has suffered severe emotional distress caused by the contemporaneous sensory perception of the death of her daughter in her arms.

103.   Steven Chavez has suffered severe emotional distress caused by the contemporaneous sensory perception of the death of his daughter at Espanola Hospital.

104.   Erica Vasquez and Steven Chavez' emotional distress is of such an intensity that no ordinary person would or should be expected to tolerate it.

105.   The Defendant's conduct created an unreasonable risk of causing injury or death, subjecting both Erica Vasquez and Steven Chavez to severe emotional distress.

106.   Erica Vasquez has suffered physical manifestations of injury as a result of the emotional injury, including, but not limited to, insomnia, depression, and bouts of hysteria

107.   Steven Chavez has suffered physical manifestations of injury as a result of the emotional injury, including, but not limited to, insomnia and difficulty concentrating at work.

## COUNT VIII.

## **WRONGFUL DEATH**

108.   Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

109.   As a direct and proximate result of the negligent acts and/or omissions of Dr. Comly and Dr. Goertz, Kaitlyn Rose Chavez died.

110.   In undertaking the care and treatment of Kaitlyn Rose Chavez, Dr. Comly and Dr. Goertz were under the duty to possess and apply the knowledge and use the skill and care

ordinarily used by reasonably well-qualified health care providers practicing under similar circumstances, with due consideration to locality.

111.    This action is brought pursuant to the New Mexico Wrongful Death Act, NMSA 1978, Section 41-2-1 (1978), *et seq*.

112.    Plaintiffs, and each of them, seek to recover all damages legally available under said New Mexico Wrongful Death Act.

### COUNT IX.

### LOSS OF CONSORTIUM
### *(As to Erica A. Vasquez)*

113.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

114.    Plaintiff Erica Vasquez is the natural mother of Baby Kaitlyn.

115.    As a direct and proximate result of the negligence of Defendant, Erica Vasquez suffered a loss of consortium, as that term is legally defined.

116.    That loss of consortium includes, but is not limited to, loss of companionship, impairment of the family relationship, loss of family stability, mental and emotional anguish, and other associated traumas related to the harms experienced by Plaintiff Erica Vasquez.

117.    As a direct and proximate result of Defendant's conduct, Plaintiff Erica Vasquez suffered and will continue to suffer a loss in an amount not presently determinable, but to be proven at the time of trial.

### COUNT X.

## LOSS OF CONSORTIUM
### *(As to Steven W. Chavez)*

118.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

119.    Plaintiff Steven Chavez is the natural father of Baby Kaitlyn.

120.    As a direct and proximate result of the negligence of Defendant, Steven Chavez suffered a loss of consortium, as that term is legally defined.

121.    That loss of consortium includes, but is not limited to, loss of companionship, impairment of the family relationship, loss of family stability, mental and emotional anguish, and other associated traumas related to the harms experienced by Plaintiff Steven Chavez.

122.    As a direct and proximate result of Defendant's conduct, Plaintiff Steven Chavez suffered and will continue to suffer a loss in an amount not presently determinable, but to be proven at the time of trial.

## COUNT XI.

## LOSS OF CONSORTIUM
### *(As to Dylan B. Vasquez and Amanda Vasquez)*

123.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and contained in all preceding paragraphs of this Complaint as though they are fully set forth herein and they are, each and every one, adopted by reference as though they were in fact fully set forth herein.

124.     Plaintiffs Dylan B. Vasquez and Amanda Vasquez are the biological siblings of Baby Kaitlyn.

125.     As a direct and proximate result of the negligence of Defendant, Dylan B. Vasquez and Amanda Vasquez suffered a loss of consortium, as that term is legally defined.

126.     That loss of consortium includes, but is not limited to, loss of companionship, impairment of the family relationship, loss of family stability, mental and emotional anguish, and other associated traumas related to the harms experienced by Plaintiffs Dylan B. Vasquez and Amanda Vasquez.

127.     As a direct and proximate result of Defendant's conduct, Plaintiffs Dylan B. Vasquez and Amanda Vasquez suffered and will continue to suffer a loss in an amount not presently determinable, but to be proven at the time of trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter final judgment in favor of Plaintiffs and against Defendant in an amount to be proven at the time of trial for all of Plaintiffs' damages, including, but not limited to, compensatory damages; hedonic damages (loss of enjoyment of life as it relates to Kaitlyn Chavez); loss of consortium; as well as costs associated with bringing this cause of action; for post-judgment interest; and for such other further relief as the Court deems just and proper.

24

Dated this 28th day of February, 2017.

Respectfully submitted,

BRANCH LAW FIRM

Margaret M. Branch, Esq.
Trevor S. M. Stevens, Esq.
2025 Rio Grande Blvd., NW
Albuquerque, NM 87104
(505) 243-3500 Telephone
(505) 243-3534 Facsimile
mbranch@branchlawfirm.com
tstevens@branchlawfirm.com
*Attorneys for Plaintiffs*

25

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Erica A. Vasquez, Individually, and as Natural Mother of Kaitlyn Rose Chavez; Steven W. Chavez, Individually, and as Natural Father of Kaitlyn Rose Chavez, et al. | United States of America |

**(b)** County of Residence of First Listed Plaintiff    **Rio Arriba**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Branch Law Firm
2025 Rio Grande Blvd. NW
Albuquerque, NM 87104; 505-243-3500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☒ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☒ 362 Personal Injury - | Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | Medical Malpractice | ☐ 385 Property Damage Product Liability | Leave Act | ☐ 865 RSI (405(g)) | Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **IMMIGRATION** | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 462 Naturalization Application | | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Sections 2671-2680

Brief description of cause:
Complaint for Wrongful Death; Medical Malpractice

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
25,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
02/28/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.